UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOYCE MARIE SMITH,

                Plaintiff,

v.

**DECISION AND ORDER**
**17-CV-1202**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

## INTRODUCTION

Plaintiff Joyce Marie Smith brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her applications for supplemental security income ("SSI") and disability insurance benefits under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 13, 15. For the reasons that follow, the Commissioner's motion is GRANTED, and the plaintiff's motion is DENIED.

## BACKGROUND

On November 21, 2013, the plaintiff protectively filed applications for SSI and DIB with the Social Security Administration ("SSA") alleging disability since March 28, 2012. Tr.[1] 168-181. On April 7, 2014, the plaintiff's claims were denied by the SSA

---

[1] References to "Tr." are to the administrative record in this matter.

1

at the initial level. Tr. 104-105. On June 6, 2016, the plaintiff appeared with her attorney and testified before Administrative Law Judge, Stephen Cordovani ("the ALJ"). Tr. 44-76. On July 20, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 19-44. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on September 29, 2017. Tr. 1-4. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past

3

relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. The ALJ found the plaintiff met insured status requirements of the SSA through December 21, 2014. Tr. 24. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since September 6, 2012. Tr. 24. At step two, the ALJ found the plaintiff has the following severe impairments: bilateral carpal tunnel syndrome; lumbar spine degenerative disc disease and herniated disc without myelopathy status post April 9, 2012 lumbar fusion at the L2-L3 level; osteoarthritis; diabetes mellitus; and obesity. Tr. 24-25. The ALJ found the plaintiff's hypertension, kidney disease, hepatitis C, arterial occlusion of the lower right extremity, migraine headaches, and depressive disorder are non-severe impairments. Tr. 27. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 29.

Next, the ALJ determined that the plaintiff retained the RFC to "perform a range of sedentary work[2]," specifically, that she "cannot climb ladders, ropes, or scaffolds"; "she can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs"; "she can frequently reach, handle, and finger"; "she cannot work with vibratory tools or equipment"; "she cannot work at unprotected heights or around dangerous moving mechanical parts"; and "can sit or stand at discretion." Tr. 30. At step four, the ALJ determined the plaintiff is capable of performing her past relevant work as a "case manager." Tr. 37. Accordingly, the ALJ concluded that the plaintiff was not disabled from September 6, 2012, through July 20, 2016, the date of his decision.[3]

II.     Analysis

Plaintiff argues that the ALJ erred by: (1) improperly relying on his own opinion to determine the functional effects of her bilateral carpal tunnel syndrome; and (2) failing to evaluate her "chronic pain syndrome" at step two, rendering the RFC assessment not supported by substantial evidence. Dkt. No. 13, at 14, 19. The Commissioner contends the ALJ's RFC assessment is supported by substantial evidence. Dkt. No. 15 at 9-10, 16. This Court finds that substantial evidence supports the ALJ's decision that the plaintiff was not disabled from July 12, 2012, through July 5, 2016, for the reasons that follow.

---

[2] "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).
[3] Although the plaintiff originally alleged an onset date of March 28, 2012, she previously filed a claim with the SSA that was denied on September 4, 2012. Accordingly, the ALJ amended the plaintiff's alleged onset date to September 6, 2012. Tr. 57.

5

### A. The ALJ Properly Evaluated Evidence Related to Plaintiff's Bilateral Carpal Tunnel Syndrome.

Plaintiff argues that the ALJ improperly evaluated her bilateral carpal tunnel syndrome when he failed to cite any medical opinion in support of his RFC finding that she could "frequently reach, handle, and finger." Dkt. No. 13 at 16. The plaintiff contends that if an acceptable medical source had evaluated the functional effects of her bilateral carpal tunnel syndrome, he or she may have found more severe limitations concerning her ability to reach, handle, or finger. As a result, a finding of disabled may have been warranted as "most sedentary jobs require good use of the hands and fingers for repetitive hand-finger action." *Id.* at 18 (quoting SSR 83-10).

The plaintiff is correct that the record does not contain a medical opinion as to the plaintiff's ability to work with her hands on a regular and continuous basis in an ordinary work setting, despite her bilateral carpal tunnel syndrome. However, the absence of a medical opinion on this narrow area of functioning does not render the ALJ's RFC unsupported nor does it compel remand where the ALJ's finding that the plaintiff could "frequently reach, handle, or finger" is supported by the record as a whole.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). In determining a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)).

6

"An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Although an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, his conclusion is not required to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* The Second Circuit Court of Appeals has held that where a claimant's medical record contains sufficient evidence from which an ALJ can assess a claimant's RFC, a medical source statement or formal medical opinion is not necessarily required. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order).

As the ALJ acknowledged in his decision, the record contains no complaints, evaluation or diagnosis of bilateral carpal tunnel syndrome until the plaintiff complained of pain (8 of 0-10 scale) in her left arm and hand to her primary care physician on January 25, 2016. Tr. 35. On February 2, 2016, the plaintiff was examined by John Lawrence, M.D. ("Dr. Lawrence") for evaluation of a three-week history of left arm pain and numbness of nontraumatic etiology. Tr. 666. Dr. Lawrence noted that the plaintiff had slightly decreased hand grip strength in her left hand, positive Tinel's sign bilaterally, and decreased sensory function in the left ulnar distribution. *Id.* On February 5, 2016, Dr. Lawrence diagnosed the plaintiff with "bilateral carpal tunnel syndrome of a mild severity," finding that nerve conduction studies showed normal

7

results in the muscles and nerves except: "prolongation of the bilateral median motor and sensory latencies" with "low amplitude observed in the left median motor nerve." Tr. 782. Dr. Lawrence noted that he was unable to localize a radiculopathy (pain) from an electrophysiological point of view and prescribed the plaintiff with a cock-up splint for CTS pain, with an oral steroid for inflammation, and a one-month follow-up visit for the plaintiff. *Id.* On March 30, 2016, Dr. Lawrence evaluated the plaintiff again, noting that two-week oral steroid treatment rendered no significant improvement of her left arm pain and numbness. Tr. 795. Dr. Lawrence noted that although the plaintiff had numbness, it was only on the left and the plaintiff's EMG study showed normal nerve conduction of the left ulnar nerve. *Id.* Dr. Lawrence opined the plaintiff had "almost neuritis" and referred her to hand therapy for bilateral carpal tunnel syndrome with follow-up in 4 to 6 weeks for re-evaluation. *Id.*

In his decision, the ALJ referenced Dr. Lawrence's treatment notes and objective medical testing and found the plaintiff could perform "frequent reaching, handling, and fingering." Tr. 35. Although the plaintiff suggests that more severe limitations *could* have been assessed had the ALJ requested an opinion regarding the plaintiff's ability to reach, handle, or finger in consideration of her mild bilateral carpal tunnel syndrome; the plaintiff fails to identify any evidence in the record to support this contention other than her own subjective complaints made to Dr. Lawrence. The ALJ also considered the plaintiff's testimony regarding her daily activities including: that she could carry a half-gallon of milk or a bag of sugar; prepares her own meals; washes dishes; self-administers three insulin shots per day; and engages in hobbies including

reading (for which she regularly travels to the library) and doing jigsaw puzzles.[4] Tr. 31, 37, 60-61, 64. On a Function Report, the plaintiff indicated that she did puzzles and painting on a daily basis, but that she could not sit for long due to her impairments and could no longer cook big dinners for her family or assist friends with catering for events. Tr. 217-218. The plaintiff also indicated that she had "no problem" using her hands and that she used a tool given to her after her surgery to assist with reaching. Tr. 219. Of significance here, during the administrative hearing, the plaintiff did not mention bilateral carpal tunnel syndrome or any functional limitations relating to her hands and did not testify that she was on any medication or other treatment for bilateral carpal tunnel syndrome. Tr. 62.

Having thoroughly reviewed the record, this Court finds that under the law stating Plaintiff bears the burden of proving disability, given the particular circumstances presented in this case, it was not necessary for the ALJ to obtain a medical statement from a medical source assessing the plaintiff's ability to "reach, handle, and finger." Plaintiff did not complain of carpal tunnel syndrome until five months before her administrative hearing (several years after her alleged disability onset date). Moreover, Plaintiff did not even mention any limitations with handling during the administrative hearing, and her testimony regarding her activities of daily living belie any claim that she is severely restricted in her ability to reach, handle, and finger. Lastly, there is no objective evidence that she is restricted beyond what the ALJ determined.

---

[4] Notably, the plaintiff also reported to her medical treatment providers that she smokes six-to-seven cigarettes daily. Tr. 614, 802.

9

### B. The ALJ's failure to address the plaintiff's chronic pain syndrome at step-two was harmless because the ALJ considered the plaintiff's chronic pain syndrome in determining her RFC.

The plaintiff also argues that remand is required because he erred at step two by failing to address her chronic pain syndrome. Dkt. No. 13 at 19. Here, the Commissioner contends that the ALJ considered the plaintiff's chronic pain syndrome in his RFC determination and that the plaintiff failed to show how the diagnosis and treatment she received for chronic pain caused functional limitations beyond what the ALJ accounted for in determining her RFC. Dkt. No. 15 at 13.

At step two of the sequential evaluation process, an ALJ must consider "whether the claimant has a 'severe impairment' which significantly limits [her] physical or mental ability to do basic work activities." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520(c), 416.920(c). It is the claimant's burden to present evidence that establishes the severity of her impairment. 20 C.F.R. § 404.1512(c). The claimant must demonstrate "that the impairment has caused functional limitations that precluded [her] from engaging in any substantial activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) and *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

The Second Circuit Court of Appeals has held that "the standard for a finding of severity under step two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146,

151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). "An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Bryant v. Berryhill*, No. 17-CV-518-FPG, 2017 WL 6523294, slip op. at *4 (W.D.N.Y. Dec. 21, 2017) (internal quotations and citations omitted); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

Here, while the ALJ did not specifically address the plaintiff's chronic pain syndrome at step two, he found that she had other severe impairments including: lumbar spine degenerative disc disease and herniated disc without myelopathy status post April 9, 2012 lumbar fusion at the L2-L3 level; osteoarthrosis; diabetes mellitus; obesity; bilateral carpal tunnel syndrome; and continued the sequential disability analysis. Tr. 24-29. Therefore, the question for this Court is whether the ALJ considered all of the plaintiff's impairments, including chronic pain syndrome when determining her RFC. If he did, any error at step two is harmless. *See O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014).

In his decision, the ALJ acknowledged the plaintiff's consistent treatment for diagnosed back and other musculoskeletal pain and, specifically, "chronic pain syndrome." Tr. 32-37. He found that since her lumbar surgery in April 2012, the plaintiff's treatment records revealed that her pain was largely controlled with medication and conservative treatment including physical therapy. Tr. 37. Therefore,

11

remand on this issue is not warranted where, although the ALJ did not specifically address the plaintiff's chronic pain syndrome at step two of the sequential disability analysis, the error was harmless when the decision reflects that he considered the impairment in his RFC determination, as discussed further during the credibility analysis below.

### C. The ALJ's credibility determination was proper.

The plaintiff also argues that the ALJ erred in discrediting the plaintiff's subjective complaints of pain based on "the lack of supporting objective findings" and "conservative treatment." Dkt. No. 13 at 20. The Commissioner contends that the ALJ properly discredited the plaintiff's subjective complaints of pain because of the inconsistencies with her daily activities and the conservative nature and effectiveness of the treatment she received. Dkt. No. 15 at 15.

An ALJ's decision to discount a claimant's subjective complaints of pain must be upheld by the court if the finding is supported by substantial evidence. *Mileski v. Berryhill*, 2018 WL 624273 at *6 (W.D.N.Y. Jan. 30, 2018). The Second Circuit Court of Appeals has held that it is the function of the Commissioner and not the courts to appraise the credibility of claimants. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). In determining the credibility of a claimant's subjective complaints, there must be medical signs or other findings that show the existence of a medical condition that "could reasonably be expected to produce the pain other symptoms alleged." 20 C.F.R. § 404.1529(a). If so, then the ALJ must evaluate the

intensity and persistence of the claimant's symptoms to determine the extent to which they limit her work capacity.  Id. at §404.1529 (c)(1).  When objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ considers other evidence, such as the plaintiff's statements, daily activities, duration and frequency of pain, medication and treatment.  Id. at § 404.1529(c)(3), 20 C.F.R. § 416.929(c)(3); SSR96-7p.

Here, the plaintiff argues that the ALJ erred in discrediting her subjective complaints of pain because the ALJ failed to acknowledge the "unclear etiology" of chronic pain syndrome.  Dkt. No. 13 at 20.  In support of her argument the plaintiff cites *Soto v. Barnhart*, 242 F.Supp.2d 251, 254 (W.D.N.Y. Jan. 13, 2003).  However, the plaintiff's reliance on *Soto* is misplaced.  In *Soto*, the Court found the ALJ erred in determining that the claimant was capable of performing a light range of work when the ALJ determined there was a lack of clinical findings to support a diagnosis of fibromyalgia.  *Id.*  Unlike the ALJ in *Soto* who discredited the claimant's fibromyalgia diagnosis, the ALJ in this matter specifically acknowledged the plaintiff's chronic pain syndrome diagnosis, noting, "[v]isits with her primary care providers from September 26, 2012 to December 2, 2015 reveal consistent documentation of a diagnosis of chronic pain syndrome, osteoarthrosis and lumbar disc disease that was controlled with medications."  Tr. 33.  The ALJ considered the plaintiff's treatment records from July 2015 with neurosurgeon John Farbach, M.D. ("Dr. Farbach"), recommending that the plaintiff continue conservative measures such as physical therapy, aqua therapy, and medication through her primary care provider, after diagnostic testing revealed no

13

pathology to warrant neurosurgical review. Tr. 33. The ALJ also observed that from July 2015 through December 2015, the plaintiff returned to her primary care providers for refills on her medications. Further, the ALJ annotated Dr. Webster's treatment notes from 2012 through the end of 2015, illustrating the plaintiff's treatment of pain via prescription medication and observing that her pain was assessed as well-controlled. Tr. 33-34. The ALJ was entitled to consider medication taken and treatment received to relieve symptoms, see 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), and therefore he did not err in finding that the plaintiff's success with medication and physical therapy diminished her credibility.

The ALJ also found that the plaintiff's reported daily activities indicated a level of functioning inconsistent with her allegations of totally disabling pain. The ALJ noted that during her administrative hearing, the plaintiff testified she is "very involved" with her church which she attends at least three days a week for choir practice (once a week for two hours), bible study, Sunday services, and prayer meetings. Tr. 37. In addition to frequently attending church functions, the plaintiff also testified that she regularly walks to the library to read, walks to the grocery store once a week to shop, and does jigsaw puzzles. Tr. 37. Despite her chronic pain symptoms, the ALJ noted that the plaintiff also reported on a Function Report in January 2014, that on a daily basis she was able to complete household chores; walk for exercise around the block; attend choir rehearsal, church, and monthly bible study; bathe herself; and visit the nursing home. Tr. 214, 223. The ALJ also referenced the plaintiff's consultative examination in February 2014 where she reported that she was capable of cooking

14

daily, cleaning once or twice weekly, doing her laundry once a week, shopping once a month, and caring for her personal hygiene on a daily basis. Tr. 37. Accordingly, the ALJ found that the plaintiff's level of functioning as indicated by her daily activities did not correlate with her subjective complaints of pain. Although the plaintiff "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing her credibility, 20 C.F.R. § 404.1529(c)(3)(i). Therefore, the ALJ properly determined that the plaintiff's daily activities lessened her credibility.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citation omitted). The ALJ properly found the plaintiff's allegations regarding the functional limitations of the impairment were not supported by the record evidence including the plaintiff's testimony regarding her daily activities and the conservative nature and effectiveness of her treatment.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is GRANTED and Plaintiff's Motion (Dkt. No. 13) is DENIED.

15

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

DATED: Buffalo, New York
May 20, 2019

                                           *s/H. Kenneth Schroeder, Jr.*
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**